FILED

2020 Dec-04  PM 04:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| **CANDY DARDEN,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **THE LINCOLN NATIONAL LIFE** | ) | |
| **INSURANCE COMPANY; AND** | ) | |
| **THE GROUP LONG TERM** | ) | |
| **DISABILITY INSURANCE FOR** | ) | |
| **EMPLOYEES OF INOAC USA,** | ) | |
| **INC..** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff Candy Darden ("Ms. Darden") asserts this complaint for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") committed by The Lincoln National Life Insurance Company ("Lincoln"), and asserts her right to relief and properly paid benefits through the Plan called The Group Long Term Disability Insurance For Employees of INOAC USA, Inc. ("The Plan").

## INTRODUCTORY STATEMENT

1. This is an action for legal and equitable relief seeking redress of violations of the Employee Retirement Income Security Act (hereinafter referred to as "ERISA"). This suit is brought pursuant to 29 U.S.C. § 1132(a) to secure disability benefits due to Plaintiff through the Plan. Equitable relief is also sought to the extent that legal relief is not available for benefits paid for the wrong time frame.

2. Ms. Darden became disabled due to serious intestinal and stomach issues, inclusive of uncontrolled, frequent bouts of diarrhea with a prolapsed anus, and the inability to retain hemorrhoid tissue within her body. Her last day of work was June 8, 2018 and she never returned to work after that date.

3. The short term disability benefits should have been paid beginning June 14, 2018, and long term disability should have commenced paying then September 13, 2018. Instead short term disability benefits were eventually paid beginning October 1, 2018 and long term disability paid beginning January 8, 2019.

4. The Plan was designed to pay participants 60% of their wages until the Social Security Administration found the participant disabled at which time the amount of the Social Security disability monthly benefit was utilized to reduce the amount of the long term disability benefit.

5. It has been the law for many years that a Social Security disability benefit is not due to be paid until after five full months of disability using a regular calendar

2

month. Thus, Ms. Darden was due to receive about five months of her full benefits and then the benefits thereafter would be reduced by the amount of Social Security disability.

6. The Social Security Administration found Ms. Darden disabled as of June 6, 2018 and thus she was entitled to benefits as of December 1, 2018. This finding was made in December 2019 retroactive back to her date of disability. Lincoln erred in the management and handling of the time frame for benefit payments. Lincoln took advantage of that error and claimed an offset for months that would not constitute an offset had paid the claim properly and according to the time frames required.

7. By erratic and untimely claim decisions and delayed claim payments, Ms. Darden was placed in a difficult financial circumstance while fighting for her health. She was forced to borrow money from friends and family to pay for basic necessities such as food, medical expenses and shelter.  When the Social Security decision was made in December 2019 benefit monies were paid in January 2020 retroactive for the time frame beginning December 2019. Ms. Darden used those monies to pay back loans from family and friends. This seemed equitable and fair given that Lincoln had placed her in this predicament with its errant and erratic claim process.

8. Ms. Darden promptly informed Lincoln of the Social Security decision and agreed to work out a payment plan to repay any monies excessively paid by Lincoln given this decision.  However, Lincoln rejected this effort and claimed an overpayment for all long-term disability benefits and for a period of short term disability benefits in spite of the fact that Ms. Darden should have received at least five months of benefits without any offset.

## JURISDICTION

9. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" as that term is defined within 29 U.S.C. § 1001, et. seq.  The Plan and Lincoln "may be found" within this district.

10. Venue is appropriate in this District Court pursuant to 29 U.S.C. § 1132(e)(2), in that the employee welfare benefit plan at issue was at least partly administered in this District and Defendants either may be found or they reside in this District.

## PARTIES

11. Plaintiff Candy Darden is a participant in the Plan at issue and therefore is entitled to benefits available thereunder.

12. Lincoln is a foreign corporation that does business by agent or otherwise in all counties in Alabama.

13. Lincoln is a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21) for the Plan.

14. One of Lincoln's designated agents for service of process is:

> Corporation Service Company, Inc.
> 641 South Lawrence Street
> Montgomery, AL 36104

15. Lincoln is an entity insuring the benefits provided by the Plan beginning January 1, 2015. Lincoln labors under a conflict of interest as such benefits are paid out of its assets. Lincoln exercises control over payment of benefits and operations of the plan. It exercises all control over claim manuals and guidelines and provision of those documents.

16. Lincoln is the entity that drafted the plan documents used to govern provision of benefits to participants at all times it insured the provision of benefits.

17. Lincoln is an entity meeting ERISA's definition of a "party in interest" in this case as that term is defined by 29 U.S.C. § 1002(14).

18. The Defendant Plan is an "employee welfare benefit plan" as defined within 29 U.S.C. § 1001, et. seq., and may be served with process at the following address:

5

INOAC USA, Inc.,
901 1/2 Nutter Drive,
Bardstown, KY, 40004

## THE PLAN

19. The Plan is funded entirely by a group long term disability insurance policy.

20. Through and including the date of Ms. Darden's last day of work on June 8, 2018, the insurance coverage funding for the Plan was provided through Lincoln.

21. The group policy was obtained by INOAC USA, Inc., to confer certain benefits upon Ms. Darden as part of her employment compensation package.  The employer is not a party presently as it played no role in making the claim decisions and in fact actively urged Lincoln to pay the claim as Ms. Darden could not perform her occupation. The employer also did not act as the plan administrator regarding provision of the claim manual and guidelines as Lincoln alone had control of those documents.

22. As a result, the policy qualifies as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1), and Ms. Darden qualifies as a participant and/or beneficiary under the same as those terms are used in 29 U.S.C. § 1001 *et seq*.

23. Under the Plan, Ms. Darden was and remains "disabled" as the policy defines that term.  The Lincoln policy defines disability as follows:

**TOTAL DISABILITY or TOTALLY DISABLED will be defined as follows:**

**1. During the Elimination Period and Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of his or her Own Occupation.**

**2. After the Own Occupation Period, it means that due to an Injury or Sickness the Insured Employee is unable to perform each of the Main Duties of any occupation which his or her training, education or experience will reasonably allow.**

**The loss of a professional license, an occupational license or certification, or a driver's license for any reason does not, by itself, constitute Total Disability.**

24. The policy also promises prompt claims payments within 30 days of receipt of proof of loss, and interest on untimely claim payments at 12%. Specifically the policy states:

**TIME OF PAYMENT OF CLAIMS. Benefits payable under this Policy will be paid:**

**1. immediately after the Company receives complete proof of claim and confirms liability; and**

2. in no event more than 30 days after the Company receives acceptable proof of claim.

After that:

1. Any benefits will be paid monthly, during any period for which the Company is liable. If benefits are due for less than a month, they will be paid on a pro rata basis. The daily rate will equal 1/30 of the Monthly Benefit.

2. Any balance, which remains unpaid at the end of the period of liability, will be paid immediately after the Company receives complete proof of claim and confirms liability. If a portion or portions of a claim are in dispute, the Company will pay benefits for any portion or portions of a claim that are not in dispute within 30 calendar days of receipt of first proof of claim.

**INTEREST ON LATE CLAIMS.** If a claim is not paid or properly denied within 30 calendar days from the date the Company receives first proof of claim; then interest will accrue from the 31st day after the Company receives first proof of claim, at the rate of 12% per year, until the claim is settled.

If the Company needs an extension to settle a claim, interest will accrue during the extension period.

8

25. While Lincoln purports to reserve discretion in the Plan, regardless, it is not entitled to any deference with its decision due to its intentional failure to perform a full and fair review including failure to timely make decisions. Therefore, its decision is due to be reviewed *de novo*.

26. Lincoln has not of late contested or challenged the existence of Ms. Darden's disabilities, but has rather refused to correct its errors regarding timing of benefits paid and improper withholding of benefits, which have financially harmed Ms. Darden.

## DEFENDANTS' LIABILITY

27. Ms. Darden was a plant line worker at all material times while working for her employer INOAC. She was hired in 2014. She was considered a reliable employee and did not have excessive work absences until 2018. Her occupation required her to work at a production pace on her feet, with adequate stamina to perform tasks on the line, and without frequent unscheduled breaks.  If an employee was absent from the line, it slowed the production pace, and the line would not meet the production requirements for customers and plant profitability.

28. The plant did not have individualized bathrooms with showers and counterspace to allow for sanitary change of colostomy bags and cleanup from uncontrolled bowel movements. The bathrooms had to be available for all employees and were not sanitized after each employee's use.

9

29. Ms. Darden was a participant in the Plan, at all material times. She had several claims at differing times in prior years, but always made the effort to return to work. In 2018, she began to experience significant health issues relating to her colon. She began to miss work and used up her paid leave. To her credit, she attempted to continue working, but had experienced health issues including dizzying spells and fatigue and was taken from the workplace by an ambulance. On occasion, she soiled herself on the line due to bouts of diarrhea related to a prolapsed anus, and family was called to take her home.  She embarrassingly created an unsanitary work environment for herself and other employees.  She had surgeries and doctor's appointments causing her to exceed leave requirements. The workplace did not have the sanitary conditions to allow Ms. Darden to reinsert bodily tissue back into her body, nor tend to other issues.

30. Pursuant to the Plan and Lincoln's group policy, Ms. Darden made a claim for short term disability benefits on June 7, 2018. Her last official day was June 8, 2018. Ms. Darden's treating physician had taken her off work due to her serious intestinal and stomach problems.

31. More than 30 days later on July 10, 2018 a nurse for Lincoln opined that Ms. Darden was not disabled, despite the restrictions found by a treating physician. This nurse privately made notes in the claim record indicating that Ms. Darden had 8 prior short term disability claims which she apparently was taking

into account in making her claim decision on this particular claim. Ms. Darden now has been without income for more than 30 days notwithstanding the promises in the policy.

32. The nurse was not qualified as a physician to contradict the opinions of a treating doctor, and apparently she was biased given her notation of 8 prior claims and in failing to recognize that Ms. Darden always made the effort to get back to work after experiencing health issues.

33. Ms. Darden challenged that decision but Lincoln dragged the process out. On or about August 17, 2018 Ms. Darden informed Lincoln that she now required breast surgery due to concerns over cancer.  The fear was over the very type of cancer which claimed the life of her mother when Ms. Darden was in her thirties. She inquired as to whether she could assert a second claim for the breast surgery so at least she had some income.  She was informed that a second claim could not be asserted. She was not being paid benefits.

34. Lincoln continued to drag the process out leaving Ms. Darden without income. Now as of October 1, 2018 Ms. Darden's condition had not resolved but declined and she required surgery for a colostomy. She informed Lincoln of this. Ms. Darden continued without income relying on family and friends for money to meet her basic necessities such as food, shelter, and out-of-pocket costs for medical care.

35. Lincoln continued to drag the claim process out, and a frustrated Lincoln analyst, familiar with Ms. Darden's claim, filed a second disability claim on October 1, 2018, notwithstanding the information previously provided to Ms. Darden.  It was based on this second surgery.

36. However, Lincoln still delayed making any decision.  Finally, November 14, 2018 Lincoln decided that Ms. Darden was disabled, but only going back to the second claim date of October 1, 2018. As to the first claim, personnel for Lincoln still decided that Ms. Darden was not disabled notwithstanding a completely opposite conclusion for the second claim.

37. The short term disability benefits were paid pursuant to this second claim but should have been paid going back to June 14, 2018. Long term disability benefits should have been paid commencing on September 13, 2018, but now were paid pursuant to this second claim on January 8, 2019. This deprived Ms. Darden of several months of benefits and further caused an offset of Social Security disability benefits to create a larger overpayment than was warranted.

38. Notwithstanding all of these problems, once a Social Security decision was made regarding disability benefits in December 2019, Ms. Darden promptly brought this decision to the attention of Lincoln.  She sought to negotiate with Lincoln reimbursement of now overpaid past benefits for some of the months in question. She advised that the months of no income required her to pay back loans

provided by friends and family. Lincoln refused to discuss this and immediately
ceased paying any benefits, again forcing Ms. Darden to incur further financial
hardship. Ms. Darden could have acted unfairly, like Lincoln had acted, by
delaying notice of that decision until much later. Nonetheless, she acted in good
faith only to receive a financial "backhand" across her face for doing so, losing
monthly benefits entirely.

39. These improper decisions and the improper overpayment was brought to
the attention of Lincoln by way of an appeal dated September 28, 2020 which was
sent to the appeals unit and a copy was also provided to the ongoing disability
claims analyst. Ms. Darden sought to present the appeal sooner, but Lincoln
delayed in furnishing the entire claim record both for short term disability benefits
and long term disability benefits.  It still remains unclear whether the entire claim
record has been furnished.

40. Nonetheless, Lincoln ignored the appeal and did not make a decision
within 45 days as required by law and the Plan, nor by the time this lawsuit was
filed.

41. During the course of preparing her appeal Ms. Darden repeatedly
requested that Lincoln furnish its claims manual to better understand how Lincoln
had so badly erred with the claim process in refusing to ever pay the first claim,
but yet paying the second claim despite the overlapping time frames and the same

illness. Lincoln refused to produce its claims manual, which is contrary to the mandates of the Department of Labor as set forth in the Code of Federal Regulations and opinion letters of the Department of Labor.

42. Very clearly Lincoln was utilizing disability guidelines in connection with this policy interpretation. In order for any decision to receive due deference, Lincoln must conduct an open and fair claim process and produce such guidelines. Lincoln's failures preclude deference to any decision.

43. Upon Ms. Darden's claim being deemed exhausted by operation of law after November 18, 2020, Counsel for Ms. Darden requested the production of an updated copy of his claim file, and the claim manual pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iii), as Ms. Darden chose to seek judicial review due to the failure of Lincoln to make a decision.

44. Documents identified thus far by Ms. Darden as being part of his claim file establish numerous breaches and errors committed by Lincoln while administering this claim, including:

(a)   The failure to maintain adequate claims procedures in compliance with Department of Labor regulations;

(b)   The targeting of Ms. Darden's claim for denial because ERISA governs and because she had prior short term disability claims;

(c)    The failure by Lincoln to take any meaningful measures to insulate its claims process from its inherent conflict under the Supreme Court case *Glenn v. MetLife* and instead allowing its profit motive to influence its claims administration for Ms. Darden;

(d)    The withholding of relevant documents and information from Ms. Darden throughout the claims process and depriving Ms. Darden of the ability to obtain a full and fair review of his claim;

(e)    Taking an adversarial posture against Ms. Darden instead of a fiduciary posture by searching for ways to avoid paying her claim;

(f)    Failing to adhere to the terms of the Plan, including as to the timely acceptance and processing of a claim for benefits and ensuing appeals;

(g)    Unreasonably refusing to produce its claims manual; and

(h)    Failing to pay interest at 12% on claim decisions not made within 30 days of adequate proof of claim, as provided in the plan document.

45. As set forth above in connection with Lincoln's fiduciary breaches, Lincoln's claim decision regarding overpayment was the product of a conflict of

15

interest whereby it allowed its own financial interests to supersede its fiduciary obligations to Ms. Darden. Under *Glenn*, this presents an additional reason for application of a *de novo* standard to their claim decision.

46. This conflict of interest further calls into question the credibility of Lincoln's claims personnel and reviewers.

47. Lincoln considered the applicability of ERISA and prior short term disability claims which have been paid before making its decision. This presents an additional reason for application of a *de novo* standard to the overpayment claim decision.

48. Lincoln's prior short term disability and long term disability decisions did not comport with 29 U.S.C. § 1133's requirement that any notice of the adverse action must contain the specific reasons for such action, written in a manner calculated to be understood by the participant, and must comport with Department of Labor regulations regarding appeal rights and the limitation of action dates.

49. The same regulations must also apply to any overpayment decisions which further constitutes adverse action given benefits are withheld.

50. Lincoln did not issue any written decision *at all* on Ms. Darden's appeal within the time required under the Plan and relevant regulations.

51. Ms. Darden has exhausted all Plan remedies even though Lincoln's failure to adhere to Plan terms or ERISA requirements and regulations did not require it.  As such, this claim is ripe for judicial review.

52. Alternatively, Ms. Darden alleges Lincoln's withholding of her benefit likewise is wrong, arbitrary, and capricious and similarly the product of a biased and financially conflicted administrative process.  Ms. Darden also alleges that Lincoln violated its duty to Ms. Darden by taking an adversarial posture against Ms. Darden instead of a fiduciary posture when Lincoln set about searching for ways to avoid paying part or all of this claim.

53. To the extent that the claim manual constitutes a plan document to guide in making benefits decisions Ms. Darden notes that Lincoln is the *de facto* plan administrator for purposes of providing this document as it is not in the possession of her employer. Ms. Darden asserts a statutory penalty, claim of $110 per day running from  September 29, 2020 and until the claim manual is provided.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Ms. Darden respectfully requests this Court find jurisdiction and venue appropriate, and grant the following relief:

a.      For an order against Lincoln and the Plan awarding Plaintiff all benefits due and owing in accordance with the terms of the Plan identified in this Complaint, as well as all interest due thereon at 12% as required by the

policy and as permitted by law and equitable principles pursuant to 29 U.S.C. § 1132(a); and

      b.     For a judgment against Lincoln and the Plan awarding Plaintiff all costs and reasonable attorney's fees incurred connected to the prosecution of and pursuit of relief in this action as permitted under 29 U.S.C. § 1132(g)(1); and

      c.     For this Court to exercise its discretion to award statutory penalties of up to $110 per day against Lincoln as *de facto* plan administrator regarding the claim manual and guidelines should it be found to be a plan document or instrument used to operate the plan, and for other equitable relief against all parties for abusing the claim process and preventing it from fairly addressing the claims of Ms. Darden; and

      d.     Such other relief as may be deemed equitable, just and proper.

Respectfully submitted,

David P. Martin (ASB-3500-M68D)
M. Clayborn Williams (ASB-9101-A43M)
**The Martin Law Group, LLC**
**Attorneys for Plaintiff**
P.O. Box 20087
Tuscaloosa, AL 35402
Phone (205) 343-1771
Facsimile (205) 343-1781
david@erisacase.com
clay@erisacase.com

**Plaintiff's Address:**

Candy Darden
c/o The Martin Law Group, LLC
PO Box 20087
Tuscaloosa, AL 35402

**Defendant's Address:**

The Lincoln National Life Ins. Co.
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

INOAC USA, Inc.,
901 1/2 Nutter Drive,
Bardstown, KY, 40004